**Adam Ford** (4115531)
Ford & Crane PLLC
228 Park Avenue S.
New York, NY 10003
Tel: (212) 518-7007
Email: adam.ford@fordcranelaw.com
*Attorney for the Plaintiff*

**Michael Grinblat** (4159752)
Law Offices of Michael Grinblat
817 Broadway, Fourth Floor
New York, NY 10003
Tel: (347) 796-0712
Fax: (212) 202-5130
Email: michael.grinblatesq@gmail.com
*Attorney for the Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SEMYON GRINBLAT**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>**195 BURGER CORP.**, **BILL WOLF PETROLEUM CORP.**, **JOHN DOE 1-X**, persons yet unknown, **Limited Liability Companies, Partnerships, Corporations 1-X**, entities yet unknown,<br><br>Defendants. | **MOTION FOR CLASS CERTIFICATION**<br><br><br><br>**CASE NO.: 19-cv-3799**<br><br><br><br>**JURY DEMANDED** |

Plaintiff moves this Court to certify, pursuant to Fed. R. Civ. P. 23(b)(1)(b), a class comprising of all those similarly situated who, as persons who must use wheelchairs by reason of various disabilities, and who use or desire to use the services and accommodations offered to the public by the Defendants, and are protected by, and are beneficiaries of, Title III of the

1

Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. §12182, §12183 and §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. 2000a-3, §204 of the Civil Rights Act of 1964 – the ADA's Accessibility Guidelines, 28 CFR Part 36, subpart D, the 2004 ADA Accessibility Guidelines ("ADAAG") at 36 CFR Part 1191, appendices B and D, 2010 ADA Standards for Accessible Design (hereinafter "2010 Standards"), the Building Code of the State of New York, as well as New York State Civil Rights Law §40-c and §40-d, New York State Human Rights Law §296 and New York City Human Rights Laws [Administrative Code] §8-107 (the "Applicable Laws").

## I. Proposed Class Definition

Plaintiff seeks injunctive relief to remedy Defendants' violations of the aforementioned laws. The scope of the proposed class consists of persons who must use wheelchairs by reason of various disabilities, and who use or desire to use the services and accommodations offered to the public by the Defendants, and are protected by, and are beneficiaries of, the Applicable Laws.

This case presents a question of law common to Plaintiff and all class members; whether the Defendants' fast food restaurant, Burger King, and the adjacent parking lot, located at 195-10 Jamaica Avenue, Hollis, NY 11423-2640, hereinafter referred to as the "Subject Facility" are in compliance with the Applicable Laws. This question can be resolved on a class-wide basis, making certification appropriate. Pursuant to Rules 23(a) and 23(b)(2) of the Fed. R. Civ. P., Plaintiff respectfully move this Court to certify the following class with named Plaintiffs as class representative:

> All individuals who reside within the geographic boundaries of the Courts of Appeals for the Second and Third Circuit who live with a disability as defined by 28 CFR §36.104, and more specifically use a wheelchair to aid in mobility, and who have encountered or will encounter the physical barriers to entry located at the Subject Facility which are violative of the Applicable Laws (the "Proposed Class").

## II.     Background

### a.  Overview of the Facts and Law

The Plaintiff, who was born in 1949, is an elderly man aged beyond his 70 years. He suffers from debilitating diseases and was diagnosed with a neurological condition, which affects his walking. The Plaintiff's treating neurologist determined that he has gait dysfunction, the causes of which include peripheral neuropathy due to diabetes mellitus, chronic right basilar ganglia lacunar infarct and cerebellar ataxia. The Plaintiff's treating neurologist also determined that he has essential tremor. Furthermore, the Plaintiff has decreased vision due to glaucoma and is blind in the right eye. The Plaintiff's gait is unsteady and he falls when he walks short distances. His treating neurologist prescribed him a wheelchair and a handicapped parking placard. The Plaintiff obtained the wheelchair and uses it regularly. The New Jersey Motor Vehicle Commission issued him a disabled person parking placard together with a handicapped identification card. The handicapped placard can be used in any car, in which the Plaintiff is travelling. The Plaintiff relies on his wheelchair and parks appropriately in handicapped accessible parking spaces. He also needs appropriate and statutorily mandated space next to that car, so that he may transfer from the car to the wheelchair.

### b.  Named Plaintiff's Factual Background

In December 2018, the Plaintiff came to the Subject Facility by car to enjoy full and equal access to, and the benefits of, all the accommodations and services offered at the Defendant's property. Adjacent to the Defendants' fast food restaurant is a parking lot provided by the Defendants for their customers. The Defendants designated, designed and constructed the parking lot for their customers. There are 12 parking spaces in the parking lot of the Defendants' Subject Facility. Two of the 12 parking spaces in the Subject Facility's parking lot are identified

as handicapped parking spaces by hanging identification signs and blue marking lines on the pavement.

Since at least December 2018, the Defendants have engaged in unlawful practices in violation of the ADA, the New York State Civil Laws, the New York State Human Rights Laws and the New York City Human Rights Laws. The Defendants own the fast food restaurant, Burger King, and the parking lot, and/or lease, and/or operate them, and/or designed them, and/or painted them, and/or marked them, and/or exercise control over them, and/or manage them, and/or maintain them, and/or altered them since 1992. The Subject Facility is a public accommodation within the meaning of Title III of the ADA, 42 U.S.C. §12181(7)(B) and 28 CFR §36.104 Place of public accommodation (2), New York State Human Rights Law §292(9) and New York City Human Rights Law, Admin. Code of the City of New York, §8-107(4).

The Plaintiff and his son came to the Subject Facility by car and parked in one of the handicapped parking spaces in its parking lot. The Plaintiff transferred to the wheelchair from the car in the access aisle. The Plaintiff then tried to rotate the wheels of his wheelchair to climb up the built-up curb ramp, but that proved to be impossible, because the ramp is impermissibly steep. Consequently, the Plaintiff's son had to push the Plaintiff up the curb ramp. The Plaintiff then was not able to open the fast food restaurant's doors, because tension of their springs is impermissibly high. Consequently, the Plaintiff's son had to open the fast food restaurant's doors and assist the Plaintiff with entering it.

When the Plaintiff was paying at the counter at the fast food restaurant, Burger King, for the food he was purchasing, he was not able to extend his feet, knees and toes, because there was no space under it, causing him to reach uncomfortably and strain in his attempt to pay for his meal.

On the way back to the car, the Plaintiff was not able to safely descend from the curb ramp, because it was too steep. He tried to hold the wheels of his wheelchair with his hands to control it, but was not able to do so. Consequently, the Plaintiff's son assisted the Plaintiff with descending down the steep curb ramp.

The Subject Facility's parking lot was either designed by people, who did not have the Plaintiff and his needs, and needs of others similarly situated, in mind, to accommodate him and facilitate his access to the Subject Facility, or worse. Frustrated, disappointed and humiliated, the Plaintiff left the Subject Facility's parking lot.

The Subject Facility is located not far from the Plaintiff's son's home, in Hollis, Queens. The Plaintiff enjoys visiting that vibrant neighborhood and comes there often. The Defendants' Subject Facility is conveniently located and the Plaintiff intends to visit it, purchase food offered for sale in it and enjoy its services, as soon as the architectural barriers are removed. The Plaintiff has difficulties gaining access to the Subject Facility and paying for the food, because of the unlawful architectural barriers, and therefore suffered an injury in fact. The Plaintiff has difficulties visiting the Defendants' Subject Facility, continues to be discriminated against due to the architectural barriers, which remain at the Subject Facility, all in violation of the ADA, the New York State Civil Rights Laws, and the New York State and the New York City Human Rights Laws. The barriers to access the Subject Facility have effectively denied the Plaintiff ability to visit the property and have caused him personal injuries, including, but not limited to, pain of body and mind, emotional distress, embarrassment, humiliation and frustration.

The Defendants' Subject Facility violates 42 U.S.C. §12181, §12182, §12183, §12204 of the ADA, 28 CFR §36.302 and §36.304 as well as the 2010 Standards as set forth in great detail in the Complaint at paragraphs 88 through 123 (the "Barriers to Entry").

### III. The Court Should Certify the Class

Federal Rule of Civil Procedure, Rule 23(a) provides that an action requires four conditions to qualify for class treatment: (i) the class must be so numerous that joinder of all members is impracticable, (ii) there must be questions or law or fact common to the class, (iii) the claims of the representative parties must be typical of the claims of the class, and (iv) the representative parties will fairly and adequately protect the interests of the class.

#### a. This Action Satisfies the Class Certification Requirements of Rule 23(a)

##### i. The Proposed Class Members Are So Numerous That Joinder is Impracticable

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Impracticable does not mean impossible, but "only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244-45 (2d Cir. 2007). "[N]umerosity is presumed at a level of 40 members . . . ." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (citing 1 *Newberg on Class Actions* § 3.05 (2d ed. 1985); see also *Betrand v. Sava*, 684 F.2d 204, 209 (2d Cir. 1982) (leaving "undisturbed" a district court's certification of a class of 53); *Shahriar v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234, 252 (2d Cir. 2011) (finding 275 sufficient); *V.W. v. Conway*, 236 F. Supp. 3d 554, 574 (N.D.N.Y. 2017) (finding class of 86 sufficient).

While a plaintiff must "show some evidence of or reasonably estimate the number of class members," a precise quantification is not required. *Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114, 119 (E.D.N.Y. 2015) (quotation omitted). Moreover, district courts "may make common sense assumptions to support a finding of numerosity." *Id.* (quotation omitted).

According to the 2018 edition of Accessible NYC: An Annual Report on the State of People with Disabilities Living in New York City[1], "Of the nearly 1 million New Yorkers who have self-identified as living with disabilities, about 10% are estimated to use wheelchairs.[2] In addition to the 100,000 wheelchair-using citizens of New York City, an unknown number of others from outside the city, such as the Plaintiff, would also qualify as members of the Proposed Class.

It would be impracticable to locate and join all the members of the Proposed Class to this action because (i) they are too numerous, possibly over a hundred thousand—the actual number is not defined; (ii) no comprehensive record exists by which to find them; and, (iii) the process of joining them would be prohibitively expensive in the context of this litigation and against the interests of judicial economy.

Moreover, as the Second Circuit has explained, "the numerosity inquiry is not strictly mathematical but must take into account the context of the particular case, in particular whether a class is superior to joinder based on other relevant factors including: (i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their ability to sue separately, and (v) requests for injunctive relief that would involve future class members." *Pennsylvania Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 120 (2d Cir. 2014) (citing *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)). Here, these factors—both alone and in combination—demonstrate that joinder is impractical.

---

[1] Found at https://www1.nyc.gov/assets/mopd/downloads/pdf/accessiblenyc-2018.pdf
[2] From the Accessible NYC report at p. 20: "The estimate of wheelchair users is calculated using a combination of data points from the 2016 American Community Survey and the 2010 Survey of Income and Program Participation. MOPD obtained the methodology from Bill Erickson, a Research Specialist at the Yang-Tan Institute on Employment and Disability at Cornell University."

Additionally, class certification is warranted because Plaintiff seeks prospective injunctive relief on behalf of future class members. *Robidoux*, 987 F.2d at 936; see also *Hawker v. Consovoy*, 198 F.R.D. 619, 625 (D.N.J. 2001) ("The joinder of potential future class members who share a common characteristic, but whose identity cannot be determined yet is considered impracticable.")

Plaintiff has demonstrated the large number of current and future class members and the many reasons why "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

### ii. Because Plaintiff's Claims Derive from Physical Facts, the Class Presents Common Questions of Law and Fact

Rule 23(a)(2) requires that there be questions of law or fact that are common to the class. "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (quotation omitted). "Courts have found that, despite differing individual circumstances of class members, commonality exists where injuries derive from a unitary course of conduct by a single system." *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 530 (E.D.N.Y. 2017) (quotations omitted). Moreover, "[e]ven a single common question" will satisfy the rule. *Id.* at 529 (quoting *Wal-Mart Stores*, 564 U.S. at 359).

To establish the existence of a common question of law, the proposed class members' claims "must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores*, 564 U.S. at 350. Thus, "[w]hat matters to class certification . . . is not the raising of common 'questions' . .

. but, rather, the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* (quotation omitted).

The Barriers to Entry exist physically at the Subject Facility as a factual matter and are the same regardless which members of the class might encounter them. In this case, the Applicable Laws are identical regardless of the personal circumstances of any individual member of the Proposed Class—the wheelchair definitionally requirement ensures that this is the case.

The proposed class members thus have raised a "common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores*, 564 U.S. at 350.

### iii. Plaintiff's Claims Are Typical of the Claims of the Members of the Proposed Class

Rule 23(a)(3) requires that the claims of the class representatives be "typical of the claims . . . of the class." To establish typicality, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (quotation omitted). The "typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux*, 987 F.2d at 936; see also *Shahriar*, 659 F.3d at 252 (finding typicality where plaintiffs' evidence showed that all class members were subject to the challenged policies of the defendants).

In this way, commonality and typicality "tend to merge" because "[b]oth serve as guideposts for determining whether, under the particular circumstances, maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so

9

interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Sw.*, 457 U.S. at 157 n.13

The Plaintiff's experience in encountering the Barriers to Entry is representative in all material respects to any member of the Proposed Class who would visit the Subject Facility; his injury is the same as their injury would be. "Indeed, the factual situation and the legal theories upon which the Plaintiff brings this action are not only typical of the entire class, but are nearly identical. Therefore, the Plaintiff has established that the typicality requirement is met in this case." *Assif v. Titleserv, Inc.*, 288 F.R.D. 18, 24 (E.D.N.Y. 2012).

      iv. The Named Plaintiff Will Adequately Protect the Interests of the Proposed Class Members and Counsel is Qualified to Litigate this Action

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class and must have no interests antagonistic to the interests of other class members." *Denny v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). To defeat certification, any conflict must be "fundamental." *Id*. (quotation omitted).

Plaintiff desires see the Barriers to Entry remedies because he encountered them and was humiliated thereby. He has no interests that run counter to those of any other class member. The named Plaintiff is not seeking monetary damages, but instead seeks the same injunctive relief for himself and the class as a whole.

Plaintiffs' counsel also "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy of counsel requirement is satisfied 'where the class attorneys are experienced in the field or have demonstrated professional competence in other ways, such as by the quality of the briefs and the arguments during the early stages of the case.'" *D.S. ex rel.*

*S.S. v. New York City Dep't of Educ.*, 255 F.R.D. 59, 74 (E.D.N.Y. 2008) (quoting *Schwab v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 992, 1106 (E.D.N.Y. 2006), rev'd on other grounds sub nom. *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008)).

Plaintiff is represented by two attorneys, his son Michael Grinblat, and Adam Ford, who were classmates at Duke Law School from 1999 through their graduation. Both have over 18 years' experience in the practice of law. Mr. Ford practiced law at the notable firms of Shearman & Sterling and McDermott Will & Emery. While it might be argued that Mr. Grinblat might have a conflict in representing the class due to his familial relationship with the Plaintiff, if Defendants object to his appointment as class counsel, Mr. Ford is ready and able to serve as class counsel alone as he has no such potential conflict.

### v. Plaintiff's Class Definition is Ascertainable

The Second Circuit also recognizes an implied requirement of ascertainability under Rule 23. In *In re Petrobras Sec. Litig.*, the Court "clarif[ied] the scope" of the ascertainability doctrine, holding that "a class is ascertainable if it is defined using objective criteria that establish a membership with definite boundaries." 862 F.3d 250, 257 (2d Cir. 2017); see also id. at 265 ("declin[ing] to adopt a heightened ascertainability theory that requires a showing of administrative feasibility at the class certification stage").

The class is not overbroad or indefinite, and class members are readily identifiable as to time and context. Here, objective criteria clearly define the boundaries of the class. Membership is defined by geographic proximity to the Subject Premises, making an encounter with Barriers to Entry plausible, and the use of a wheelchair. While Plaintiff might not be able to name all of the Proposed Class, every member would be obvious once encountered.

### b. Plaintiff Satisfies the Requirements of Rule 23(b)(2) or Rule 23(b)(3)

Rule 23(b)(2), under which Plaintiffs seek certification, requires that Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The underlying premise of subsection (b)(2) is "the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores*, 564 U.S. at 360 (quotation omitted). In other words, Rule 23(b)(2) is met where "a single injunction or declaratory judgment would provide relief to each member of the class." *Id*. Rule 23(b)(2) "is only applicable where the relief sought is exclusively or predominantly injunctive or declaratory." *Coco v. Inc. Vill. of Belle Terre*, 233 F.R.D. 109, 115 (E.D.N.Y. 2005) (quotation omitted). "Class certification under Rule 23(b)(2) is particularly appropriate in civil rights litigation" as it "is designed to assist and is most commonly relied upon by litigants seeking institutional reform in the form of injunctive relief." *Hill v. City of New York*, 136 F. Supp. 3d 304, 357 (E.D.N.Y. 2015) (quotations omitted). The relief sought in this case only reinforces the "the Second Circuit's general preference . . . for granting rather than denying class certification." *Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 361 (E.D.N.Y. 2009).

This suit falls directly within the scope of Rule 23(b)(2) because the Defendants have acted, or refused to act, on grounds that apply generally to the class, so that final injunctive relief, or corresponding declaratory relief, is appropriate respecting the class as a whole.

Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3), because questions of law, or fact, common to class members, clearly predominate over any questions

affecting only individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

## IV. Conclusion

Plaintiff respectfully requests that the Court grant their Motion for Class Certification and enter an appropriate certification order such as will be proposed by Plaintiff.

Signed: June 28, 2019

Adam Ford (4115531)

Ford & Crane PLLC
228 Park Avenue S.
New York, NY 10003
Tel: (212) 518-7007
Email: adam.ford@fordcranelaw.com
*Attorney for the Plaintiff*

Michael Grinblat, Esq. (4159752)

Law Offices of Michael Grinblat
817 Broadway, Fourth Floor
New York, NY 10003
Tel: (347) 796-0712
Fax: (212) 202-5130
Email: michael.grinblatesq@gmail.com
*Attorney for the Plaintiff*

## **CERTIFICATE OF SERVICE**

I, the undersigned, certify that on the 12th day of March, 2020, I caused a true and correct copy of the foregoing Motion for Class Certification to be filed with the Court electronically via CM/ECF, which caused notice to be served upon all e-filing counsel of record via the Court's Notice of Electronic Filing [NEF].

                                                      /s/ Adam D. Ford